NATHAN C. AYER, and others, in equity,

*vs.*

CITY OF BANGOR.

Penobscot.  Announced at May Law Term, Middle District, 1893.  Opinion July 20, 1893.

*Moneys received by towns, in trust. Use of principal. Interest. Municipal Indebtedness. Constitution, Art. XXII; R. S., c. 3, § § 51, 52; Stat. c. 300, January 2, 1893.*

By a statute enacted in 1873, now embodied in R. S., c. 3, § § 51, 52, cities and towns are empowered to receive money by donation or legacy, in trust, for benevolent, religious or educational purposes. The statute also provides that, "Interest shall be allowed if the fund shall be used by the city or town; otherwise it shall be placed at interest or income, the city or town being hereby made responsible for its security."

Under the will of a testator, which took effect two years after the enactment of the statute above named, the will containing no directions as to how the principal should be invested, the city of Bangor holds, in trust, one hundred thousand dollars, the income of which has been appropriated for the support

of a public library in accordance with the terms of the testator's gift. The principal having been paid into the city treasury by its managers, (called trustees of the Hersey Fund, appointed by a city ordinance,) pursuant to a decree of this court in the case of *Bangor* v. *Beal*, of November 16, 1892. (*ante* p. 129,) the city thereupon voted to use it to erect a public city building, to be known as the Hersey Memorial Building, and paying interest for the money so used at the rate of four and one half per cent.

Upon a petition for an injunction to restrain the city against making such use of the fund,

*Held;* that none of the objections against this use of the fund can be sustained;

*That,* the statute fairly implies that the fund may be used for needed municipal purposes; — the language employed implying license and not prohibition;

*That,* the testator was apparently willing to leave the matter of the investment of the fund entirely to the judgment and discretion of the city,— the trustee selected by him;

*That,* the court has complete jurisdiction over the fund, and can establish the rate of interest payable by the city, independent of the city council, under Stat. 1893, c. 300;

*That,* Art. XXII, of Amended Constitution, which took effect January 2, 1878, does not apply to " any fund received in trust by a city or town;"

*That,* the city's liability for the fund is not increased, since it is now liable for it absolutely; whether it uses the fund or invests it otherwise, the liability cannot be thereby increased or made more than absolute;

*That,* such use of the fund will not violate the agreement between the city and the Bangor Mechanic Association, which contains no stipulation that the city shall make no change in the management or investments of the principal.

ON REPORT.

This was a bill in equity asking the court to enjoin the city of Bangor from paying and using the Hersey Fund, so-called, given to the city by the will of S. F. Hersey, for building a city hall. The statute in force when the city received said fund, reads as follows : (R. S., c. 3.)

" Sec. 51. Any city or town may receive money by donation or legacy in trust for benevolent, religious, or educational purposes, for the erection and maintenance of monuments, and for the benefit of public cemeteries and lots therein ; provided, that the city or town lawfully consents.

"Sec. 52. Interest shall be allowed if the fund is used by the city or town ; otherwise it shall be placed at interest or income, the city or town being responsible for its security.

" Sec. 53. The city or town, by its officers or agents, shall apply the fund or its income in accordance with the written directions of the donor or testator, made known at the time when the fund was accepted.

"Sec. 54. If the city or town fails to apply the fund or its income at the times and for the purposes prescribed in said directions, it reverts to the donor, if living; otherwise, to his heirs."

The will provides as follows :

"Finally, in the year 1900 to apportion and divide the entire residue and remainder of the trust estate then remaining in their hands in ten ( 10 )equal parts or shares, as near as may be, and to manage and dispose of same, discharged of said trust as follows : To convey and pay over to the City of Bangor, Maine, where I have been engaged in business for the last forty ( 40 ) years, three-tenths ( 3-10 ) parts thereof, the principal to be held in trust and the income thereof applied and appropriated by said city to the promotion of education, the health and good morals of the citizens, with the suggestion of a public park, etc.

In the year 1882, it was considered advisable by the city of Bangor to receive and accept one hundred thousand dollars in lieu of the bequest of said three-tenths part, which it would be entitled to have in the year 1900, by the terms of the will; and thereupon the city council authorized the treasurer of the city to release its claim to said three-tenths upon receiving one hundred thousand dollars; and the city of Bangor on August 5, 1882, in its release of that date agreed "to assume the trust and administration thereof of said one hundred thousand dollars, according to the wishes of said testator, Samuel F. Hersey, as by him expressed in his said will and codicil relative to the provisions by him therein made for said city;" and the treasurer of the city in accordance with said vote, and in consideration of one hundred thousand dollars, released said three-tenths of the said estate.

Upon receiving said money, the city council passed a vote submitting the questions of the investment and disposition of said bequest to the mayor and president of the common council for the time being, the living ex-mayors of the city and seven other citizens. This committee gave all parties a hearing and made a report to the city council in which they say : . . .

"The first question considered by the committee was : What rights has the city as receiver of the amount paid by the trustees of Samuel F. Hersey's will, in the adjustment of this bequest?

"So far as the principal, one hundred thousand dollars, is concerned, we are decided that the expenditure of any portion thereof is in palpable violation of the spirit of the bequest and of the letter of the agreement between the city and the said trustees." . . .

"The third question considered was : How shall this trust be executed by the city, so far as relates to the custody of the principal received from the trustees of the will by said city, in adjustment of the bequest?

"We recommend that the principal shall be forever held by the city of Bangor, and kept distinct from any other moneys or funds, held by said city for municipal, or other purposes, meaning that it shall never be expended or absorbed so as to constitute any addition to the indebtedness of the city, but shall be separately invested in approved securities ; not intending, however, to forbid its investment in bonds of the city of Bangor."

"The committee recommend that the income of the fund be devoted to the maintenance of a free public library."

This report was accepted, and an ordinance adopted in March, 1883, by the city carrying into effect its recommendation, and the Hersey Fund, so-called, was committed to a board of trustees, who invested said fund in bank stocks, railroad stocks, and city of Bangor bonds, and have since 1883 up to this year devoted the income of the fund to the public library.

The Bangor Mechanic Association had a library of books of the value of $12,000, and a fund of the value of $20,000, and the trustees of said Hersey Fund as authorized by the city council entered into an agreement with that association by which it transferred its library and fund to the city, for the purpose of a public library, and the city agreed to devote the income of the Hersey Fund to said library.

In 1893, a project was conceived of using the Hersey Fund for the purpose of building a city hall, and a decree was obtained transferring the Hersey Fund from the custody of the trustees

appointed under the ordinance of March, 1883, to the treasury of the city. (See *Bangor* v. *Beal, ante* p. 129.) The city council afterwards passed votes devoting said Hersey Fund to the building a city hall.

The complainants, inhabitants and tax payers of Bangor, by this bill asked the court to restrain the city from using the fund for this purpose, and alleged that such use would be illegal.

First. Because it would be in violation of the provisions of the terms of said will, and the trusts thereby created, and assumed by the city, in accepting the bequest.

Second. Because it would be in violation of the contract between the city and the Bangor Mechanic Association.

Third. Because it would be in violation of the constitutional provision forbidding a city to create a debt or liability exceeding five per centum of its valuation.

The city denied in its answer that the release, or instrument, executed by it August 5, 1882, imposed upon Bangor any conditions or limitations, in the use or administration of said fund, other than those imposed by the will. It also denied that the proposed use of the principal of said fund was in contravention of said Hersey's will, or of any stipulation or agreement entered into by Bangor with others.

It was admitted that the aggregate debts and liabilities of the city exceed five per cent of its last regular valuation.

It was also admitted that upwards of $78,000 of said fund was invested in bonds of the city; that $21,000 of said bonds mature the present year; and still others thus invested will mature in the near future.

The case was heard in the court below, May 18, 1893, at Bangor, upon bill and answer; and by agreement of the parties was reported for the decision of this court, and transferred for argument to the Middle District, May term, at Augusta.

*C. P. Stetson, Appleton and Chaplin,* for plaintiffs.

Jurisdiction: 2 Dill Mun. Corp. § 909.

City is charged by the statute (R. S., c. 3, § § 51-4) and by common law with the trusts named in the will, and must hold the principal in trust and devote the income to the promotion

of education, the health and good morals of the citizens. Testator intended that the principal should be held in trust, should be prudently invested, and the income devoted to the above purposes. Contemplated use not only a wrongful misapplication and misuse, but also an absolute destruction of the trust fund. Hall built on its own land becomes the absolute property of the city. Rule of investment, same as an individual under a will. *Harv. Coll.* v. *Amory*, 9 Pick. 761; *Dickinson, Applt.* 152 Mass. 186; *Emery* v. *Batchelder*, 78 Maine, 21; *Moulton* v. *Mattocks*, 84 Maine, 545. Will and statute require the income more or less, and not the specific sum of $4,500 anually to be appropriated and applied.

Agreement with Mech. Asso: 1 Dill. Mun. Corp. § 314; 2 High, Injunc. § 1243.

Constitutional law : *Culbertson* v. *Fulton*, 127 Ill. 30; 2 Dill. Mun. Corp. §§ 916-919; *Crampton* v. *Zabriskie*, 101 U. S. 601.

*H. L. Mitchell*, City Solicitor, *Jasper Hutchings*, with him, and *Charles Hamlin*, of counsel for defendant.

WALTON, J. The city of Bangor holds in trust a hundred thousand dollars, the income of which has been appropriated towards the support of a public library. The city now proposes to use the principal of the fund, or so much of it as may be needed, with which to erect a public city building, paying interest for the money so used at the rate of four and one half per cent per annum.

The complainants (ten taxable inhabitants of Bangor) protest against such a use of the principal of the fund, and pray for an injunction restraining the city against making such a use of it.

It is insisted that such a use of the fund will violate the terms of Mr. Hersey's will, through which the money has been received; that it will violate a contract between the city and the Bangor Mechanic Association; and, lastly, that it will violate that article of our State Constitution which limits the indebtedness of towns and cities.

It is the opinion of the court that no one of these objections can be sustained.

I. Mr. Hersey's will contains no directions as to how the principal of this fund shall be invested. The will declares in general terms how the income shall be employed; but it is entirely silent as to how the principal shall be invested, so as to yield an income. Apparently the testator was willing to leave that matter entirely to the judgment and discretion of the city.

II. The objection that the use of this fund by the city will violate an agreement between the city and the Bangor Mechanic Association lacks support. An examination of that agreement fails to disclose any clause that would be violated by such a use of the principal of the fund. The city proposes to pay for the use of this fund an annual income of forty-five hundred dollars. This is a higher rate of interest than the wealthy and prosperous cities of this State are accustomed to pay at the present time; and at some future time, justice to the tax payers of Bangor may require the amount to be reduced. But that question is not now before us. It may not be improper to add, however, that the court has complete jurisdiction over this fund, and can establish the rate of interest which the city shall be required to pay, and that no action of the city council in relation thereto will be binding upon the court. See act, 1893, chap. 300.

III. The third and last objection urged against the use of this fund by the city is, that the city is now indebted beyond the amount allowed by the Constitution of the State, and, if the city uses the fund for municipal purposes, its liabilities will be thereby increased. We fail to see how any use that can be made of this fund will increase the city's liability with respect to it. The city is now liable for this fund — liable absolutely — and if the city uses the fund, instead of otherwise investing it, we fail to see how its liability can be thereby increased or be made more than absolute.

The fact must not be overlooked that the liability of towns and cities for trust funds differs from that of ordinary trustees. The latter are liable only for good faith and prudence. The for-

mer are liable absolutely.   If the fund is lost, good faith and pru-
dence will be no defense.   If a town or city uses a trust fund
for municipal purposes, of course it is responsible for it.   And
if it does not use the fund, but otherwise invests it, still, its
liability continues.   The statute authorizing towns and cities to
receive trust funds declares that such towns and cities shall be
responsible for the safety of the funds.   And this respon-
sibility attaches, is absolute, and continues the same, whatever
disposition is made of the fund.   The assumption, therefore,
that the use of this fund by the city of Bangor will increase its
liabilities, is not well founded.   So far as this fund is con-
cerned, its liabilities will remain the same, whatever disposi-
tion may be made of it.   R. S., c. 3, § 52.

And there is another fact that must not be overlooked.   That
article of our State Constitution which limits the indebtedness of
towns and cities does not apply to trust funds.   (See Art. XXII
of the Amendments.)   That article expressly provides that it
shall not be construed as applying to any fund received in trust
by a city or town.   Consequently, the liability or indebtedness
of a town or city, occasioned by the reception or use of a trust
fund, is not limited by the Constitution.   The constitutional
limitation does not apply to trust funds.

But if we look at the questions presented in a broader and
less technical light, we fail to see any objection to the use which
the city of Bangor proposes to make of the Hersey fund.   It is
admitted that seventy-eight thousand dollars of the fund are
now invested in bonds of the city of Bangor.   Was not this a
prudent and proper investment?   And if the city now uses and
becomes indebted for the balance of the fund, paying a just and
reasonable interest therefor, will not the investment be equally
safe and equally proper?   Since the city is liable absolutely for
the safety of the fund, what better investment can be made of
it?   No expressed intention of the testator will be thereby
defeated.   No wrong will be done to any beneficiary.   No
expressed intention of the legislature will be defeated.   The
statute declares that interest shall be allowed if the fund is used
by the city; but it does not forbid such a use.   We think the

language employed in the statute fairly implies that such a use may be made of the fund. The fact that such a use would be liable to be made of a trust fund was evidently before the legislative mind. It was not overlooked. And if the legislature had intended to forbid such a use, we can not resist the conviction that it would have said so in language unmistakable. We think the language employed implies license, not prohibition. The use of the fund for a needed municipal purpose, will not violate the limitation clause of the Constitution, for that clause expressly provides that it shall not be construed as applying to trust funds. And, viewed as a whole, we fail to perceive any reason, legal, equitable, or prudential, for granting the injunction prayed for.

*Temporary injunction dissolved and*
*the bill dismissed.*

PETERS, C. J., LIBBEY, FOSTER, HASKELL and WISWELL, JJ., concurred.